## ROMORT MFG. CO. v. SERVICE STATION EQUIPMENT CO.

### No. 5957.

Circuit Court of Appeals, Seventh Circuit.

Jan. 7, 1937.

Rehearing Denied Feb. 4, 1937.

L. C. Wheeler and S. L. Wheeler, both of Milwaukee, Wis., for appellant.

Ira Milton Jones, of Milwaukee, Wis., and Frank E. Paige, of Philadelphia, Pa., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

The patent before us covers an apparatus for supplying air under pressure (principally to inflate auto· tires) and includes appropriate process claims dealing with inflation of tires. Both groups of claims were held by the District Court to be valid and infringed by appellant, against whom the court directed an accounting and an injunction.

After suit was brought on the single claim of patent No. 1,655,003, the bill was amended to cover the said claim and ten other claims of reissue patent, No. 19,148. The court found that eight claims of the reissue patent (1, 2, 3, 6, 7, 8, 9, and 10) were valid and infringed.

Claims 1 and 7 are the broadest product and process claims and are here set forth:

"1. In a device for charging a receiver with compressed air,· the combination of a source of compressed air, adjustable means for limiting the ultimate pressure to which said receiver is to be charged, a conduit connecting the source of com-pressed air with the receiver, a valve in said conduit, means tending to close said valve, means opening said valve when the pressure in the conduit falls to that at which the device is adjusted, and means timing the open interval of said valve, whereby said valve intermittently opens, dwells in open position, and closes, this cycle continuing until pressure in the receiver reaches that to which the device is adjusted."

"7. The method of filling a tire to a pre-determined limit of pressure, which consists in delivering through a passage to the tire a succession of charges of compressed air, at least the major portion of each charge being delivered to the tire at a pressure substantially higher than said limit and the successive charge being introduced before the pressure falls materially below said limit, and utilizing pressure of air in said passage to automatically stop the delivery of charges to the passage when the pressure in the tire reaches said limit."

The District Judge, when disposing of this suit, rendered an opinion which fully covered the question of the validity of the claims in issue. Only lack of space prevents us from quoting that opinion in full. It is sufficient to say that we agree with the District Court's conclusion respecting validity of these claims.

The sharply controverted issue in this court is not over validity, but over appellant's infringement of the claims. On this issue there is not the complete discussion that is so convincing on the issue of validity.

Non-infringement turns upon (a) whether it is necessary under the claims of the patent that the valve referred to should close so that the circuit is broken the moment the valve leaves its seat, and (b) whether in appellant's structure the valve completely closes.

. The language of claim 1 leaves us in no doubt as to the necessity of a closing valve. The seventh element in claim 1 calls for the "means timing the open interval of said valve, whereby said valve intermittently opens, dwells in open position, and closes, this cycle continuing until pressure in the receiver reaches that to which the device is adjusted."

Whether appellant's valve closes is a question of fact which upon all the evidence we must answer in the negative. True, it is, there is some evidence which

appeared in appellant's advertisements which might be construed as admissions by appellant that its valve closes. The actual demonstration, however, proves the contrary.

Probably a closer question is the extent to which appellee may invoke the doctrine of equivalents. Here again we think an examination of the file wrapper, the story of modified claims, and the explanations given to the Examiner to avoid prior art citations, all of which preceded the issuance of the reissue patent, lead us to but one conclusion. Woodford's right to a patent over Morley was dependent upon his assertion of a more exact timing means which in Woodford was the valve which opened and closed automatically and in the novel manner described in the specifications, drawings, and claims.

In the argument before the Patent Examiner on June 9, 1930, counsel for the applicant said:

"Reconsideration of the rejection of claim 5 upon Morley is solicited.

"Claim 5 calls for 'means opening the valve when the member moves inward and closing the valve a material length of time after an outward movement of the member.' In the last argument it was pointed out that the valve of Morley did not operate in this manner, and the remarks accompanying the last rejection seem to tacitly admit the truth of this statement. * * *

"However, the 'means' specified in the claim both opens and closes the valve. Aperture 20 is a feature of Morley's construction tending to open the valve, but it is not clear how it could be considered a means to close the valve. Manifestly, it requires other features of the Morley device to complete the means to either open or close the valve, and the means of Morley, which actually effect the opening and closing, do not comply with the terms of the claim."

The foregoing quotation is made not to distinguish Morley, but to show what stress was placed on the means described in elements 5, 6, and 7 of claim 1. We are thoroughly satisfied as to the scope of this claim and no range of equivalents can be given it that will include appellant's structure, which has no valve which opens and closes during the time the casing is being filled with air. Having no valve which opens and closes while the air is filling the tire, it has no timing means and no means for delivering successive charges of air during the air-filling operation.

The decree is reversed with directions to dismiss the suit.